Jeanie L. SCHORP, Appellant,

v.

BAPTIST MEMORIAL HEALTH SYS- TEM d/b/a St. Luke's Hospital and As- signs and Randall C. BELL, M.D., Ap- pellees.

No. 04–98–01037–CV.

Court of Appeals of Texas, San Antonio.

Aug. 25, 1999.

J. Ken Nunley, William A. Brant, Nunley, Davis, Jolley, Hill & Brant, L.L.P., Boerne, for Appellant.

George F. Evans, Jr., Evans & Rowe, P.C., San Antonio, Ellen B. Mitchell, Crofts, Callaway & Jefferson, P.C., San Antonio, Gail Dalrymple, Clemens & Spencer, San Antonio, for Appellees.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, PAUL W. GREEN, Justice.

## OPINION

Opinion by: ALMA L. LÓPEZ, Justice.

This appeal arises from the trial court's granting of a dismissal in favor of appellees, Baptist Memorial Health System ("Baptist") and Dr. Randall B. Bell ("Bell") on the basis that appellant, Jeanie Shorpe, failed to timely file an expert report pursuant to § 13.01(d) of the Medical Liability and Insurance Improvement Act (the Act). *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01 (Vernon Supp.1999). Schorp raises four issues on appeal. Because we do not find Schorp's failure to file a timely expert report was a result of accident or mistake, we affirm the trial court's judgment.

### Factual and Procedural Background

Schorp filed actions against the appellees for negligent care and treatment as a result of complications from Bell's care of acute respiratory distress and stypical pneumonia. While in the hospital, Schorp experienced coolness and discoloration in her left hand allegedly caused by the improper insertion of an arterial line into the radial artery of her left arm. These complications necessitated surgery. While doctors were able to save Schorp's left hand, dead tissue in two of her smallest fingers necessitated amputation.

Schorp originally filed this case in Kerr County on March 13, 1998. Schorp filed her first physician's report on June 2, 1998. While the report asserted that Bell's treatment of Schorp fell below the applicable standard of care, it failed to indicate the name of the doctor and his qualifications as a medical practitioner. Subsequently, Bell requested that Schorp comply with the requirements of article 4590i, § 13.01. In a letter dated August 14, 1998, Bell's counsel contended that the expert report filed by Schorp failed to meet the requirements of § 13.01(a) because it failed to state the name and qualifications of the physician. In that same letter, Bell requested that Schorp comply with the statute. In a letter dated August 20, 1998, counsel for Bell attempted to negate any belief by Schorp's counsel that there would be the possibility of settling the case on the basis of an anonymous report. In that same letter, Bell's counsel unequivocally stated that Bell would not entertain the possibility of settlement until Schorp complied with § 13.01.

In a letter also dated the 20th, Schorp's counsel responded to the first letter sent by Bell's counsel. He asserted that they had previously discussed the anonymity of plaintiff's expert and that defense counsel had agreed to discuss the report with their client and obtain a response regarding the possibility of settlement. Furthermore, Schorp's attorney asserted that the parties had agreed Schorp would be given additional time to file a proper report if Bell did not want to settle.

On September 9, 1998, the 180–day deadline for filing an expert report passed. Schorp filed a motion for late filing of an expert's report pursuant to 13.01(g) on September 14, 1998. Bell responded on September 15, by filing an objection to the

qualifications of plaintiff's expert witness and a motion to dismiss. On September 17, 1998, Schorp filed her first amended original petition in which she asserted the *res ipsa loquitur* doctrine. Baptist filed its motion to dismiss on September 21, 1998. A hearing on the motions to dismiss and objections to Schorp's expert report was held on September 25, 1998. At this hearing, Schorp's attorney contended that he had operated under the mistaken belief that the parties had agreed Bell would review the anonymous report and consider the possibility of settlement. Schorp's attorney also asserted that he had mistakenly believed they would be given extra time to file an expert report in the event Bell refused to settle. Appellees, on the other hand, argued that there had been an intentional effort by Schorp's attorney to settle the case pursuant to the anonymous report. They contend that Schorp's intentional decision did not amount to accident or mistake pursuant to § 13.01(g).

Subsequently, the trial court granted appellees's motions to dismiss. Findings of fact and conclusions of law were entered by the trial court.

### Accident or Mistake

In her first issue, Schorp contends that the trial court erred in not granting a 30–day extension pursuant to section 13.01(g) on the basis that her failure to file a timely expert report was based on accident or mistake. She contends that there was overwhelming evidence to support mistaken belief; therefore, the trial court's ruling against her was in error. Schorp asserts mistaken belief on the basis that her attor-

ney was under the impression that opposing counsel would grant an extension to file a proper report in the event Bell did not accept the anonymous report filed.[1] Baptist and Bell, on the other hand, contend that the evidence does not support mistaken belief, but rather, a clear intent by Schorp to contain the costs of litigation.

 We review a trial court's dismissal of a health care liability claim for failing to comply with the expert report provisions of § 13.01 by an abuse of discretion standard. *Estrello v. Elboar*, 965 S.W.2d 754, 758 (Tex.App.—Fort Worth 1998, no pet.); *Wood v. Tice*, 988 S.W.2d 829, 831 (Tex. App.—San Antonio 1999, pet. denied). Whether a trial court abused its discretion is dependant on whether it acted without reference to any guiding rules or principles. *Id.* An abuse of discretion does not occur where the trial court bases its decision on conflicting evidence. *Id.* In addition, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *Id.*

Section 13.01(d) of Article 4590i requires:

(d) Not later than the later of the 180th day after the date on which a health care liability claim is filed or the last day of any extended period established under Subsection (f) or (h) of this section, the claimant shall, for each physician or health care provider against whom a claim is asserted:

(1) furnish to counsel for each physician or health care provider one or more

---

1. We agree with Baptist's contention that even if we were to find that Schorp's mistaken belief was accidental, any holding against Bell would not operate against Baptist as no assurances were ever made by Baptist's counsel. Moreover, Schorp failed to file an expert report against Baptist. *See* TEX.REV.CIV. STAT. ANN art. 4590i, § 13.01(d) (Vernon Supp. 1999) (stating that an expert report must be filed for each physician or health care provider against whom a claim is asserted). Baptist correctly asserts on appeal that there is noth-

ing in the record to indicate that Schorp believed Baptist had agreed to an extension of time or that counsel for Bell had the authority to agree to the extension on Baptist's behalf. Therefore, while Schorp may argue that some excuse may suffice to support a basis of accident or mistake, no excuse has been offered as to why Schorp failed to file an expert report as against Baptist. Accordingly, in this opinion, we address whether accident or mistake served as a basis for failing to file a timely expert report as against Bell only.

expert reports, with a curriculum vitae of each expert listed in the report; . . . . Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(d) (Vernon Supp.1999). Within this expert report, the complainant must include "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 13.01(r)(6). In the event the expert report is not filed within the 180–day time period, § 13.01(e) allows the defendant to move for dismissal with prejudice. *Id.* § 13.01(e).

The Act does provide for two exceptions to the 180–day deadline. Under § 13.01(f), the trial court may extend any time period in section (d) for an additional 30 days for "good cause." In addition, § 13.01(g) provides that after a hearing, the trial court must grant a grace period of 30 days to permit a claimant to comply with sub-section (d) where the claimant's initial failure was not "intentional or the result of conscious indifference." Because the Act does not define "good cause" or "intentional or conscious indifference" recent case law has arisen construing these terms. *See e.g., McClure v. Landis,* 959 S.W.2d 679 (Tex.App.—Austin 1997, pet. denied); *Estrello,* 965 S.W.2d 754; *Horsley–Layman v. Angeles,* 968 S.W.2d 533 (Tex.App.—Texarkana 1998, no pet.); *Roberts v. Medical City Dallas Hosp., Inc.,* 988 S.W.2d 398 (Tex.App.—Texarkana 1999, no pet.). Where the failure to file a report is a result of accident or mistake, the trial court must grant a 30–day grace period. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(g) (Vernon Supp.1999).

Schorp relies on the court of appeals decision in *Horsley–Layman,* where the reviewing court held that some excuse, not necessarily a good excuse, is enough to warrant an extension. *See Horsley–Layman,* 968 S.W.2d at 536. The court in *Horsley–Layman* conditioned this statement on the basis that the act or omission of the claimant was accidental. *Id.* Bell contends the failure to file the proper expert report was never accidental, but an intentional decision based on economic considerations, i.e., keeping litigation costs down. We would agree.

Section 13.01(f) is not mandatory, rather it places the extension of time for good cause within the discretion of the trial court. Even where good cause exists, the trial court would still be within its discretion to grant or deny an extension. *See Roberts,* 988 S.W.2d at 402. Therefore, the focus of appellant's issue is whether Schorp acted intentionally or with conscious indifference under § 13.01(g). As the plaintiff, Schorp maintains the burden of showing some excuse of accident or mistake to establish that she did not act intentionally or with conscious indifference. *McClure v. Landis,* 959 S.W.2d at 681; *Horsley–Layman,* 968 S.W.2d at 535. It is then defendants's burden to controvert the plaintiff's evidence of mistake, or else an issue of mistake exists and an extension must be granted. *See Roberts,* 988 S.W.2d at 402.

We first address the anonymous report filed by Schorp before the 90–day deadline. The requirements of 13.01 are unambiguous and clear. *See Horsley–Layman,* 968 S.W.2d at 535. In the instant case, the first report which was filed by Schorp on June 2 failed to meet the requirements of § 13.01 because it failed to state the name and qualifications, e.g., curriculum vitae, of the expert. There was no way for defendants to determine whether Schorp's expert was qualified in the applicable standard of care. Moreover, we would note, Schorp never contended that her first expert report met the requirements under § 13.01.

We next turn to the issue of accident or mistake. We find there was some evidence of probative and substantive character to support the trial court's deci-

sion. The letters sent by Bell's attorney unequivocally deny that an agreement was made and that Bell would not accept Schorp's expert report. At the hearing, Bell's attorney testified that she did not recall having a conversation with Schorp's attorneys regarding an extension of time.[2] Moreover, there was no evidence that a written agreement had been entered into which the parties had agreed to an extension of time. *See* Tex.Rev.Civ. Stat Ann. art. 4590i, § 13.01(h) (requiring that an agreement for extending time be signed by the parties); *also* Tex.R. Civ. P. 11.

Even assuming that mistaken belief existed at some point, the correspondence sent by Bell's attorneys clearly attempted to negate that belief. Schorp's attorney was adequately warned by correspondence on August 14 wherein Bell's attorneys warned Schorp that the expert report did not meet the requirements under § 13.01. This notice came 26 days prior to the running of the 180-day deadline. While Schorp's attorney testified that he attempted to procure an expert after the first letter, no attempt was made by him to go to the trial court or seek a discretionary extension for good cause. *See* Tex.Rev. Civ. Stat. Ann. art. 4590i, § 13.01(f); *also Roberts*, 988 S.W.2d at 402 (holding that nothing in § 13.01(f) mandates that a plaintiff can only seek an extension for good cause before the 180 day deadline, but can be sought at any time). While nothing in the statute would have required Schorp to seek a discretionary extension under § 13.01(f), such an effort by Schorp

would have supported the argument of mistaken belief. In other words, as soon as Schorp's counsel realized his mistaken belief, he could have initiated remedial steps to correct that belief. Moreover, Schorp failed once again to comply or seek a discretionary extension after Bell's attorney sent the second letter which also came before the 180-day deadline.

Instead, we believe the evidence in the record supports appellee's assertion that Schorp's failure to file a timely and proper expert opinion was a result of an intentional decision to contain costs. In her motion to file a late expert report, Schorp indicated that the anonymous report was used as a means to discuss settlement negotiations without having to expend large sums of money. In addition, the letter sent by Schorp's attorney to opposing counsel for Bell explained that the reason for submitting the initial anonymous expert report was to leave open the possibility of a reasonable expectation of settling the case prior to Schorp's counsel having to spend money. Thus, what the record reveals is an intentional strategic decision by counsel for Schorp to keep litigation costs at a minimum. Therefore, we are left with the conclusion that the facts of the present case do not rise to accident or mistake as encompassed under § 13.01(g).

As a sub-argument, Schorp contends that the trial court erred in dismissing the case without first providing for progressive sanctions in accordance with the statute's intent. Both at the hearing below and in

---

2. When asked by the trial court what her testimony would be regarding an agreement, counsel for Bell responded with the following:

> I have no memory of a specific request to this statute filing time, you know, deadlines. There was a general discussion exactly as he described it about, "Gee[,] I've given you this report." And I say, "I'm telling you my doctor is not going to be impressed with this report on whether to buy him, but I'm not holding much out."
>
> \* \* \*
>
> I—honestly, Judge, my memory of that conversation is very vague, and I can't repre-

> sent to the [c]ourt that I have a memory of him specifically requesting me for any specific period of time. I just don't have a memory of it, and I apologize.

We struggle with whether or not Bell's attorney's statement, alone, specifically controverts Schorp's assertion of mistaken belief. *See Horsley–Layman*, 968 S.W.2d at 536. As evident from the record, Bell's attorney does not state that she never made an agreement, but only that she didn't recall making such an agreement. While we believe that this statement, alone, does not specifically controvert Schorp's assertion of mistaken belief, other evidence in the record belies the assertion.

oral argument before this court, counsel for Schorp contended that a reading of § 13.01 requires progressive sanctions. These sanctions are triggered when defense counsel files a motion after the 90–day deadline has passed requesting that the trial court enter an order requiring the plaintiff to file a $7,500 cost bond or risk dismissal of the case. *See* TEX.REV.CIV. ANN. art. 4590i, § 13.01(b) (Vernon Supp. 1999) (stating specifically that the trial court enter, on motion of the affected physician or health care provider, an order requiring the appellant to post a cost bond, and if they fail to do so, the trial court may dismiss the case). Here, Schorp's attorney contends that Bell's counsel "laid behind the log" and waited for the passing of the 180–day deadline before moving for dismissal with prejudice. Thus, Schorp was denied progressive sanctions of § 13.01(b) and was handed a death sentence.

■ A fundamental rule of statutory construction is that a court should ascertain the intent of the legislature as expressed in the plain language of the statute. *See St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex.1997). When a statute is clear and unambiguous, we need not resort to rules of construction or extrinsic aids to construe it, but should give the statute its common meaning. *See id.* Moreover, we are aware that we must take statutes as we find them. *See RepublicBank Dallas v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex.1985).

■ Section 13.01(b) unambiguously requires that the trial court enter an order requiring a plaintiff to post a $7,500 bond within 21 days or risk dismissal of the case. *See* TEX.REV.CIV. ANN. art. 4590i, § 13.01(b) (Vernon Supp.1999). Furthermore, such an order can only be entered pursuant to a defendant's motion. *Id.* However, there is nothing in the statute which would require the defendant to enter and file such a motion, and we will not read in such a requirement. The trial court properly adhered to the plain language of the statute. Schorp failed to comply with 13.01(d) and defendants moved to dismiss. Pursuant to that order, the trial court properly granted the dismissal. Accordingly, we overrule Schorp's first issue.[3]

### *Res Ipsa Loquitur*

In her second issue, Schorp contends that even if § 13.01 warranted dismissal of negligence claims against Baptist and Bell it did not dispose of the claim of *res ipsa loquitur* asserted by Schorp in her amended pleadings below. It is Schorp's contention on appeal that *res ipsa loquitur* is applicable to the present case because the nature of the case, as alleged, is plainly within the common knowledge of laymen precluding the need for expert testimony, and therefore compliance with § 13.01 is unnecessary. *See Haddock v. Arnspiger,* 793 S.W.2d 948, 951 (Tex.1990). Simply, Schorp contends that the issue is how long her hand was allowed to remain cold and

---

3. As a related matter, Schorp contends in her fourth issue that the trial court erred in interpreting § 13.01 against her on the basis that it failed to liberally interpret the revised statute to achieve its purpose and promote justice. *See* TEX. GOV'T.CODE ANN. § 312.006 (Vernon 1998); *City of Dallas v. Cornerstone Bank, N.A.,* 879 S.W.2d 264, 269–70 (Tex.App.—Dallas 1994, no writ). While Schorp acknowledges that the purpose of § 13.01 was to limit the number of frivolous or non-meritorious medical negligence suits, she contends that the trial court's interpretation operated to limit the present meritorious lawsuit. As argued by Schorp, when the trial court failed to give effect to her

mistaken belief argument it resulted in the dismissal of a meritorious lawsuit.

The trial court gave effect to the plain meaning of the statute in finding that Schorp failed to comply with its requirements. In doing this, it did not strictly construe the statute to the derogation of common-law. For the trial court to have granted a 30–day grace period, in light of the fact that Schorp's attorney failed to file an expert report in compliance with the statute's requirements, would have undermined the statute's intent. For that reason, appellant's fourth issue cannot be sustained. Therefore, we overrule appellant's fourth issue.

blue. Bell and Baptist attack Schorp's argument on the basis that this case deals with the insertion, monitoring and correction of the arterial line which allegedly led to the complications suffered by Schorp. According to appellees, these issues can only by resolved by expert testimony.

■ *Res ipsa loquitur*, meaning "the thing speaks for itself," is used only in certain limited cases where the circumstances surrounding the accident constitute sufficient circumstantial evidence of the defendant's negligence to support such a finding. *Mobil Chemical Co. v. Bell*, 517 S.W.2d 245, 250 (Tex.1974). Specifically, *res ipsa loquitur* applies only when two factors are present: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant. *Haddock*, 793 S.W.2d at 950.

■ Texas courts generally view *res ipsa loquitur* to be inapplicable to medical malpractice cases. *Haddock*, 793 S.W.2d at 951 (citing cases where *res ipsa loquitur* held inapplicable). However, an exception to this practice exists for cases where the "nature of the alleged malpractice and injuries are plainly within the common knowledge of laymen, requiring no expert testimony." *Id.* Examples of this exception include negligence in operating on the wrong body part and leaving surgical instruments or sponges in the body. *Wendenburg v. Williams*, 784 S.W.2d 705, 707 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *Harle v. Krchnak*, 422 S.W.2d 810, 815 (Tex.App.—Houston [1st Dist.] 1967, writ ref'd n.r.e.). *Res ipsa loquitur*, however, may not be applied in those circumstances where the use of the mechanical instrument is not a matter within the common knowledge of a layman. *Haddock*, 793 S.W.2d at 951. Finally, the applicability of *res ipsa loquitur* in medical malpractice cases is governed by the Medical Liability and Insurance Improvement Act. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 7.01 (Vernon Supp.1998); *see Haddock*, 793 S.W.2d at 950–51 (explaining that as of August 29, 1977, the courts recognized the general rule and exceptions described above).

■ In the present case, Schorp contends that pursuant to her hospital treatment for pneumonia, an arterial line was inserted into the radial artery of her left arm on January 14, 1996. An immediate cooling of her arm below the insertion was noted by Schorp. Despite getting colder and turning blue, nothing was done for Schorp for four days. On the 16th, medical personnel noticed reduced blood supply to the affected area. A hand specialist, however, was not called until the June 18th. That specialist concluded that blood circulation to the hand had been obstructed and that surgery was necessary. Surgery was conducted in which a vein graft was taken from Schorp's right forearm and transferred to the left radial arteries. Complications later developed which necessitated the removal of Schorp's small and ring fingers.

The complications and final outcome experienced by Schorp are clearly devastating. An overview of the circumstances surrounding Schorp's condition necessitates evidence on more than just the maintenance of the arterial line which was inserted into Schorp's left arm. The possible complications which may have occurred with the arterial line insertion, monitoring, and corrective actions could have contributed to Schorp's ultimate loss. Therefore, we believe it is incorrect for Schorp to assert that the sole issue before a jury would be the maintenance of the arterial line. While a juror's common sense interpretation of evidence regarding maintenance of the arterial line could be sufficient, that same common sense would not suffice with regard to evidence involving the insertion of the arterial line and any corrective action taken by medical

personnel.[4] Only expert testimony could aid a jury in making conclusions regarding these factors. For this reason, we overrule Schorp's second issue.

## Constitutionality of Section 13.01

Finally, in her third issue, Schorp asserts that § 13.01, as enforced in this case, violates both the state due process, open courts, and right to jury trial provisions of the Texas Constitution as well as her due process rights under the U.S. Constitution. Specifically, Schorp contends that the failure to file an expert report could, in many cases, lead to the dismissal of a meritorious claim. Bell and Baptist contend Schorp's rights are not violated in light of the fact that a legitimate purpose is served by the statute. In addition, they contend that Schorp's failure to comply with the statutory requirement was not a result of an inability to pay and hire an expert, but a conscious decision to contain costs.

■ Both the state and federal constitutions guarantee due process of law. *See* U.S. CONST., amend. IV, § 1; TEX. CONST. Art. I, § 19. The Texas Constitution affords greater due process protection than the U.S. Constitution. *Sax v. Votteler,* 648 S.W.2d 661, 664 (Tex.1983). Thus, if a statute is contrary to Texas due process, we need not address federal due process. *See id.*

■ We must begin with the presumption that a statute is constitutional. *See Enron Corp. v. Spring Indep. Sch. Dist.,* 922 S.W.2d 931, 934 (Tex.1996). The party challenging the constitutionality of a statute bears the burden of demonstrating that the enactment fails to meet constitutional requirements. *Id.* We first begin by

applying a two-prong test in determining whether a statute denies a constitutional right to the litigant. *See Sax,* 648 S.W.2d at 666. The litigant must show (1) that a cognizable common-law cause of action is being restricted and (2) that the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute. *Id.* Unless fundamental rights are implicated, however, the statute need only be rationally related to a legitimate legislative purpose. *See Moore v. City of East Cleveland,* 431 U.S. 494, 498–99 & n. 6, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); *C & H Nationwide, Inc. v. Thompson,* 903 S.W.2d 315, 326 (Tex.1994).

■ There is no dispute that a suit for medical negligence is recognized at common-law. *See Humphreys v. Roberson,* 125 Tex. 558, 83 S.W.2d 311 (1935). Therefore, our focus is the second prong of *Sax-* whether the restrictions encompassed in § 13.01 are arbitrary when balanced against the purpose of the statute.

■ The purpose of article 4590i was to address the perceived problem by the state legislature that litigants were filing unmeritorious claims against medical practitioners which had not been investigated in a timely manner. *Horsley–Layman,* 968 S.W.2d at 533; *McGlothlin v. Cullington,* 989 S.W.2d 449, 451–52 (Tex.App.— Austin 1999, pet. denied). In other words, medical practitioners were being placed in the situation of defending frivolous claims at a high cost. *Id.* In turn, it was the high cost of defense which, arguably, increased the cost of health and medical care. *Odak,* 934 S.W.2d at 871; *McGlothlin,* 989 S.W.2d at 451.

4. Bell and Baptist assert relevant questions which a jury would have to consider and would necessitate an expert's opinion: for example, (1) whether the decision to use an arterial line was within the appropriate standard of care; (2)what are the appropriate procedures for an arterial line insertion; (3) what other possible medical causes could exist; (4) what should have been the appropriate medical treatment or intervention? *See*

*Haddock,* 793 S.W.2d at 953 (holding that administering of a hypodermic needle for the purpose of anesthesia was not within layman's common knowledge); *Odak,* 934 S.W.2d at 873 (holding that the insertion of intravenous needles into an infant is not within layman's common knowledge). Expert witness opinion is needed to answer these question which fall outside the common knowledge of a jury.

■ Clearly, Texas has provided for a constitutionally guaranteed right to redress for its citizens. *See* Tex. Const. art. I, § 13 (also known as the Open Courts Provision). Therefore, a litigant's cause of action cannot be effectively abrogated by the legislature absent a showing that the legislative basis outweighs the denial of a constitutionally guaranteed right. *See McGlothlin*, 989 S.W.2d at 452 (construing 1995 version of Texas Medical Liability and Insurance Improvement Act). We look to the restrictions encompassed in § 13.01(d).

■ Section 13.01(d) specifically provides that a plaintiff must file an expert report for each physician or health care provider before or on the 180th day of filing a suit. Shorp's assertion for not complying with the statute, both below and on appeal, was based on the decision to keep costs at a minimum. That is, she did not comply because she was financially unable to procure an expert, rather she chose not to comply to contain costs.

This case is somewhat analogous to *McGlothlin* which was recently decided by the Third Court of Appeals. In *McGlothlin*, appellant challenged the constitutional validity of § 13.01(a) on the basis that the requirements of posting a cost bond, placing cash in an escrow account or filing an expert report within the 90–day deadline violated various state and federal rights as due process and the Open Courts Guarantee. *Id.* at 450. The record reflected, via McGlothlin's affidavit, that McGlothlin believed it would cost upwards of $2,000.00 to obtain an expert report, and that this could pose a financial barrier. This belief was based on what her attorney had told her. On review, the court of appeals did not undertake a constitutional analysis on the basis that McGlothlin essentially gave no reason for not complying with the 90–day deadline of § 13.01(a). *Id.* at 452. Therefore, McGlothlin failed to carry the burden

of proving that the Act's requirements prevented her from pursuing her claim. *Id.*

In the present case, Schorp's non-compliance is a result of an intentional decision to maintain litigation expenses at a minimum. She has not alleged, either on appeal or below, that she was financially incapable of meeting the statute's requirements. *See id.; Horsley–Layman*, 968 S.W.2d at 537 (construing 1995 act); *Odak*, 934 S.W.2d at 868 (construing same). What is evident from the record is the perceived costs which Schorp's attorney thought would have to be incurred to obtain an expert report. Based on the perceived costs, Schorp did not comply.[5] By asserting this reason, Schorp has failed to show how the statutory requirements prevented her from asserting her claim. Therefore, we need not undertake a constitutional analysis.

It is clear that § 13.01 can present a barrier for even meritorious claims that do not come into compliance with the requirements of the section. However, these requirements have not been construed as barriers to a plaintiff's cause of action, but only "a small hurdle to clear" in relation to the purpose and basis of the statute. *Odak*, 934 S.W.2d at 872. In the present case, Schorp alleges that she operated under the mistaken belief that the anonymous report would suffice in hopes of keeping litigation costs down. This amounted to failure to comply with the statute. Texas law is clear that when a litigant fails to comply with the cost bond or expert report provisions of article 4590i, the dismissal of the action pursuant to § 13.01(d) does not violate the due process and open courts provisions of Article I of the Texas Constitution.

■ In addition, Schorp also contends that the trial court's dismissal pursuant to § 13.01(d) violated her right to a jury trial. See Tex. Const. Art. I, § 15.

---

5. At the hearing below, Schorp's attorney opined that it would take $10,000 to $20,000 to pay an expert to review the records and issue a report. There is no evidence that this would be the actual cost of retaining a medical expert in this case.

738

The right to a jury trial is not an absolute right in civil cases, but is subject to certain procedural rules. *Wooten v. Dallas Hunting & Fishing Club, Inc.,* 427 S.W.2d 344, 346 (Tex.Civ.App.—Dallas 1968, no writ). Imposing the requirement to file an expert report and the failure to meet that requirement allows the trial court to dismiss the case. This dismissal is not based on the merits, but merely operates to dismiss the case on a procedural requirement which is directly related to the statute's purpose of limiting the number of frivolous suits. *See Buckholts Indep. School Dist. v. Glaser,* 632 S.W.2d 146, 149 (Tex.1982) (holding that failure of plaintiff to fulfill bonding requirement for challenging school board election did not deny taxpayer right to jury trial on merits).

In the present case, Schorp was denied the right to a jury trial on her intentional failure to fulfill a procedural requirement. Thus, we do not believe her right to a jury trial was violated. We overrule Schorp's fourth issue.

**Conclusion**

Because Schorp's failure to comply with § 13.01 was not based upon accident or mistake, we conclude that the trial court did not abuse its discretion in granting appellees's motion to dismiss. In addition, the pleading of *res ipsa loquitur* did not preclude the necessity of expert opinion to prevent the application of § 13.01. Finally, we need not address the constitutionality of § 13.01 as applied to Schorp because Schorp has failed to show how she was adversely affected by the statute's enforcement, nor do we believe Schorp was denied the right to a jury trial. Accordingly, we affirm the trial court's order of dismissal.