Opinion Issued October 20, 2005







     









In The
Court of Appeals
For The
First District of Texas




NOS. 01-04-00827-CV
          01-04-00916-CV




SAPRINA LEDAY AND MARK LEDAY, INDIVIDUALLY AND AS NEXT
FRIENDS OF MARK CONRAD LEDAY JR. AND SASHA MARQUETTA
BOOKER, Appellants

V.

JEFFREY J. ZATORSKI, M.D., AND HOUSTON NORTHWEST
PARTNERS, LTD., d/b/a HOUSTON NORTHWEST MEDICAL CENTER,
Appellees




On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause Nos. 2003-30134-A & 2003-30134-B 




MEMORANDUM OPINION

          Appellants, Saprina Leday and Mark Leday, individually and as next friends
of Mark Conrad Leday Jr. and Sasha Marquetta Booker (collectively the “Ledays”),
appeal the dismissal of their medical malpractice lawsuit against appellees, Jeffrey
J. Zatorski, M.D. and Houston Northwest Partners, Ltd., d/b/a Houston Northwest
Medical Center (“Houston Northwest”).


 In connection with their claims against
Zatorski, the Ledays contend the trial court erred in failing to grant them an extension
of time in which to file the expert report required by former article 4590i of Texas
Revised Civil Statutes.


 In connection with their claims against Houston Northwest,
the Ledays contend the trial court erred in dismissing their lawsuit for failing to file
an expert report that conformed to the requirements of former article 4590i. We hold
that the trial court did not abuse its discretion, and, therefore, affirm.  Facts
          In January 2002, Saprina Leday was admitted to Houston Northwest with
complaints of seizures and unremitting headaches and was treated by several doctors
and nurses. To diagnose the cause of LeDay’s complaints, Zatorski performed a
cerebral arteriogram—a test in which an iodine-containing compound is injected as
a contrast medium. During this procedure, Leday suffered a severe allergic reaction
to the iodine. On May 23, 2003, the Ledays sued Houston Northwest and several
doctors, including Zatorski, for medical negligence. 
          On November 20, 2003, the Ledays sent a proposed Rule 11 Agreement to all
of the defendants’ counsel, requesting a thirty-day extension in which to file the
expert report required under section 13.01 of former article 4590i. All of the
defendants except Zatorski signed the Rule 11 Agreement and the Ledays filed the
agreement with the trial court on December 5, 2003. Thereafter, the Ledays obtained
new counsel. A day before the extended deadline, the Ledays’ new attorney filed his
appearance and the Ledays filed their expert report. 
          In January 2004, Zatorski moved to dismiss the Ledays’ petition because their
expert report was not filed within the time period prescribed under section 13.01(e)
of former article 4590i. In February 2004, the Ledays responded to Zatorski’s
motion to dismiss, contending that the delay in filing their expert report was the result
of an accident or mistake, and moved under sections 13.01(g) and 13.01(f) of former
article 4590i for an extension of time in which to file their expert report. After a
hearing, the trial court denied the Ledays’ motion to extend the time to file their
expert report and granted Zatorski’s motion to dismiss. 
          In February 2004, Houston Northwest moved to dismiss the Ledays’ petition,
claiming that the Ledays’ expert report fails to provide a fair summary of Houston
Northwest’s negligence. The Ledays objected to this motion. The trial court granted
the motion and dismissed the Ledays’ claims against Houston Northwest. 
          The trial court severed the Ledays’ claims against Houston Northwest and
Zatorski. The Ledays appealed. 
The Ledays’ Claims Against Zatorski
          In their appeal against Zatorski, the Ledays contend the trial court abused its
discretion in failing to grant them a thirty-day extension in which to file their expert
report. Specifically, the Ledays contend the trial judge should have granted them an
extension of time under sections 13.01(g) and 13.01(f) of former article 4590i. 
A. Standard of Review
          We review a trial court’s ruling on a motion for extension of time to file an
expert report under an abuse of discretion standard. Walker v. Gutierrez, 111 S.W.3d
56, 62 (Tex. 2003) (“[W]e hold that a section 13.01(g) grace period determination is
reviewed under an abuse of discretion standard.”); Russ v. Titus Hosp. Dist., 128
S.W.3d 332, 336 (Tex. App.—Texarkana 2004, pet. denied) (“We review the trial
court’s ruling on a motion for extension of time to file an expert report under an abuse
of discretion standard.”). Our test for abuse of discretion is whether the trial court
acted without reference to any guiding rules and principles. Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985). 
B. Expert Report Requirement 
          Former article 4590i requires a party to furnish a copy of an expert report to
opposing parties within 180 days of the filing of a medical malpractice lawsuit or to
voluntarily dismiss her action by non-suit. Former Tex. Rev. Civ. Stat. Ann. art.
4590i §§ 1.03(a)(4), 13.01(d). The parties may agree to extend this deadline and such
an agreement is binding and shall be honored by the court if signed by the parties and
filed with the court. Id. § 13.01(h). If a plaintiff fails to comply with the requirement
of timely furnishing an expert report to the healthcare provider defendants, and
plaintiff has not voluntarily dismissed the lawsuit, the trial court shall award
sanctions, including the dismissal of plaintiff’s lawsuit. Id. § 13.01(e).
          Here, the Ledays concede that their expert report was untimely. They also
concede that Zatorski did not grant them an extension of time in which to file the
expert report. However, they contend that the trial court erred in failing to grant them
an extension of time under sections 13.01(g) and 13.01(f) of former article 4590i. 
C. Extension Under Section 13.01(g)
          Section 13.01(g) of former article 4590i requires the trial court to grant a grace
period to file an expert report if the trial court determines that the initial failure to file
the report “was not intentional or the result of conscious indifference but was the
result of an accident or mistake.” Id. § 13.01(g). An accident or mistake in this
context is characterized by the claimant’s inadequate knowledge of the facts or by an
unexpected happening that precludes compliance. Powers v. Mem’l Herman Hosp.
Sys., 81 S.W.3d 463, 466 n.3 (Tex. App.—Houston [1st Dist.] 2002, pet. denied)
(citing Nguyen v. Kim, 3 S.W.3d 146, 152 (Tex. App.—Houston [14th Dist.] 1999,
no pet.)). Conscious indifference means failing to take some action that would seem
indicated to a person of reasonable sensibilities under similar circumstances. Id. at
466 (quoting Tesch v. Stroud, 28 S.W.3d 782, 787 (Tex. App.—Corpus Christi 2000,
pet. denied)). 
          The standard for determining “accident or mistake” under this section is the
same standard that governs setting aside a default judgment or reinstating a case
dismissed for want of prosecution. Walker, 111 S.W.3d at 63; Williams v. Chisolm,
111 S.W.3d 811, 815 (Tex. App.—Houston [1st Dist.] 2003, no pet.). In our review,
we look to the knowledge and acts of the claimant. Walker, 111 S.W.3d at 64 (citing
Strackbein v. Prewitt, 671 S.W.2d 37, 39 (Tex. 1984)). “If the factual assertions in
the claimant’s testimony are not controverted by the opposing party, the claimant
satisfies his or her burden if the testimony sets forth facts that, if true, negate
intentional or consciously indifferent conduct by the claimant.” Id. Because the trial
court made no findings of fact or conclusions of law, we presume that the trial court
found that the Ledays did not satisfy their burden to show mistake or accident. Hall
v. Mieler, No. 01-03-01343-CV, 2005 WL 568281, at *2, (Tex. App.—Houston [1st
Dist.] Mar. 10, 2005, no pet.) (citing Am. Type Culture Collection, Inc. v. Coleman,
83 S.W.3d 801, 806 (Tex. 2002)). 
          Here, the uncontroverted evidence shows that the Ledays’ attorney knew the
date by which he was required to provide an expert report. The Ledays filed their
petition on May 29, 2003, and thus were required to furnish their expert report no
later than November 25, 2003. Four days before the expert report was due, the
Ledays’ counsel sent a letter to all counsel, requesting an extension of time in which
to file the report. Within a day, the Ledays’ counsel obtained everyone’s signed
agreement to the extension except Zatorski’s. By letter dated December 3,
2003—twelve days after Ledays’ counsel requested an extension from Zatorski and
three days after the expert report was due—the Ledays’ attorney filed the Rule 11
agreement without Zatorski’s signature. 
          The Ledays contend that their expert report was delayed because their attorney
“thought that all of the lawyers would grant [him] a reasonable thirty-day extension
of time to furnish expert reports.”


 Yet, the trial court could have concluded that a
person of reasonable sensibilities, knowing of the statutory deadline to file the expert
report, would not let the deadline expire on the mere assumption that opposing
counsel would not object—especially when opposing counsel has given no
indication, oral or otherwise, that he would agree to an extension. See Broom v.
MacMater, 992 S.W.2d 659, 664 (Tex. App.—Dallas 1999, no pet.) (holding
plaintiff’s counsel’s “assumption that opposing counsel would not ‘press the issue’
and seek strict compliance with the requirements” to timely file expert report did not
constitute an accident or mistake justifying failure to meet known statutory deadline); 
Tesch, 28 S.W.3d at 789 (stating that even if proposed order would have extended
deadline for filing expert report, plaintiff’s counsel was not justified relying on it
because the act specifically requires a signed agreement to extend deadline and thus
“‘[n]o person of reasonable sensibility under similar circumstances’ would rely on an
oral agreement to extend the expert report deadline.”). 
          The Ledays’ counsel filed the Rule 11 Agreement without Zatorski’s signature
and thus should have known, at least by this time, that Zatorski did not agree to the
extension. The Ledays, however, did not file anything along with the Rule 11
Agreement requesting an extension of time as to the Zatorski report. Rather, they
waited two months to file such a request—and their request came only after Zatorski
moved the trial court to dismiss him from the suit. Even if the Ledays’ counsel
thought that Zatorski would agree to an extension of time, his failure to take any
corrective action once he failed to get Zatorski’s agreement indicates that the delay
was not the result of an accident or mistake. See Schorp v. Baptist Mem’l Health Sys.,
5 S.W.3d 727, 733 (Tex. App.—San Antonio 1999, no pet.) (holding plaintiff’s
counsel’s actions contrary to accident or mistake because counsel did not seek
extension from court after realizing opposing counsel did not agree to extension of
time—“as soon as [plaintiff’s] counsel realized his mistaken belief, he could have
initiated remedial steps to correct that belief”). 
          Based on these facts, the trial court did not act without reference to any guiding
rules and principles in finding that the delay in the Ledays’ expert report was not
excused. We thus hold that the trial court did not abuse its discretion in denying the
Ledays’ motion for extension of time under section 13.01(g).


 
C. Extension Under Section 13.01(f)
          Section 13.01(f) of former article 4590i states that “[t]he court may, for good
cause shown after motion and hearing, extend any time period specified . . . for an
additional 30 days.” Former Tex. Rev. Civ. Stat. Ann. art. 4590i § 13.01(f). The
Ledays contend that it was arbitrary for the trial court to deny their request for an
extension under section 13.01(f) because their attorney “abandoned” them “on the eve
of a crucial deadline.” 
          The Ledays base their argument under this section on the allegations that
(1) their first attorney decided to withdraw from the case on November 20,
2003—five days before the deadline to file expert reports; (2) their attorney did not
notify them of the deadline or that he was withdrawing from the case until December
2, 2003—eight days after the deadline; and (3) their first attorney moved to withdraw
his representation on December 3, 2003. 
          The Ledays fail to cite to any evidence supporting these allegations. The
Ledays did not supply us with a transcript of the hearing on their motion for extension
of time and the record contains no evidence of any of their referenced dates. Without
evidence to the contrary, we assume the trial court’s decision is correct. See
Rittenhouse v. Sabine Valley Ctr. Found., Inc., 161 S.W.3d 157, 164–66 (Tex.
App.—Texarkana 2005, no pet.) (holding that motion claiming confusion
surrounding withdrawal of counsel resulted in delay in filing expert report was
sufficient to request extension under section 13.01(g), but failure to present reporter’s
record or other evidence supporting motion required presumption that trial court
properly denied it). 
          Moreover, the extension afforded under section 13.01(f) is not mandatory—it
is within the trial court’s discretion. Former Tex. Rev. Civ. Stat. Ann. art. 4590i §
13.01(f). Even if the Ledays had proved good cause, it was within the trial court’s
discretion to deny the request for an extension of time. See Tesch, 28 S.W.3d at 787
(even if appellant “showed good cause, it was within the trial court’s discretion to
grant or deny the extension”); Schorp, 5 S.W.3d at 732 (“Even where good cause
exists, the trial court would still be within its discretion to grant or deny an
extension.”); Roberts v. Med. City Dallas Hosp., Inc., 988 S.W.2d 398, 402 (Tex.
App.—Texarkana 1999, pet. denied) (stating use of the word “may” shows that
provision is discretionary, thus, “[e]ven if the [claimants] showed good cause, the trial
court was still within its discretion to grant or deny the section 13.01(f) extension”). The Ledays’ Claims Against Houston Northwest
          In their appeal against Houston Northwest, the Ledays contend the trial court
abused its discretion in granting Houston Northwest’s motion to dismiss. 
Specifically, the Ledays contend that Houston Northwest is vicariously liable for its
nurses, and because their expert report provided a fair summary of the nurses’
negligence, the trial court abused its discretion in dismissing their claims against
Houston Northwest.
A. Standard of Review
          We review a trial court’s order dismissing a claim for failure to comply with
the expert report requirements in section 13.01(d) of former article 4590i for an abuse
of discretion. Am. Transitional Care Ctrs., Inc. v. Palacios, 46 S.W.3d 873, 878
(Tex. 2001). Our test for abuse of discretion is whether the trial court acted without
reference to any guiding rules and principles. Downer, 701 S.W.2d at 241–42. When
reviewing matters committed to the trial court’s discretion, a court of appeals may not
substitute its own judgment for the trial court’s judgment. Walker, 111 S.W.3d at 62.
B. Sufficiency of Expert Report
          Under former article 4590i, a medical malpractice claimant was required to file
an expert report in conformity with section 13.01(r)(6). Former Tex. Rev. Civ. Stat.
Ann. art. 4590i § 13.01(l). To be sufficient, an expert report must be a good-faith
effort to comply with the statutory definition of an expert report. Id.; Palacios, 46
S.W.3d at 878. To constitute a “good-faith effort,” the report must provide, for each
defendant, “a fair summary of the expert’s opinions about the applicable standard of
care, the manner in which the care failed to meet the standard, and the causal
relationship between the failure and the claimed injury.” Id. The report must provide
enough information to fulfill two purposes: (1) to inform the defendant of the specific
conduct the plaintiff has called into question, and (2) to provide a basis for the trial
court to conclude that the claims have merit. Id. at 879. The only information
relevant to the inquiry is contained within the four corners of the document. Id. at
878. The report need not marshal all the claimant’s proof, but it must include the
expert’s opinion on each of the three elements that the act identifies: standard of care,
breach, and causal relationship. Id.   
          A report must specify what the defendant should have done
differently—“[w]hether a defendant breached his or her duty to a patient cannot be
determined absent specific information about what the defendant should have done
differently.” Id. at 880. In Palacios, the expert report stated that the claimant was
injured by falling out of his hospital bed, that the claimant had on bed restraints
minutes before his fall, that it is unclear how claimant could have untied the bed
restraints, and that “obviously [claimant] had a habit of trying to undo his restraints
and precautions to prevent his fall were not properly utilized.” Id. at 879. The court
found that the report was insufficient because it did not state what the defendant
should have done differently—such as monitor the claimant more closely, place
restraints on the claimant more securely, or do something completely different. Id.
at 880. The expert’s opinion that the hospital did not take precautions to prevent
claimant’s fall would only be useful if the hospital had an absolute duty to prevent
such falls. Id. 
          Here, the Ledays’ expert, Dr. Soraya Hoover, first states her qualifications and
her familiarity with the standard of care in treating hospital patients. Hoover then
states her opinion on the applicable standard of care: 
1.Patients should not be given Iodine, IVP dye or any iodine
containing compounds knowing that the patient had a
documented iodine allergy;
 
2. Patients should not be given phenergan or any substance
containing the ingredients in phenergan knowing that the patient
had a documented phenergan allergy;
 
3.Nurses should not use hospital tape on patients who have a tape
allergy;
 
4.Doctors and nurses should read warnings on the chart and the
patient’s bracelet and be aware of allergies and take action
accordingly; and
 
5.Doctors and nurses should be able to recognize an allergic
reaction such as hives and other such reactions.

          Hoover’s report continues with her opinions on the breach of the standard of
care, including those by Houston Northwest: (1) the nurses “allowed the iodine
containing compound to be introduced into Saprina LeDay” and (2) the “nurses
should have recognized an allergic reaction and treat it as same.” Hoover concludes
with an opinion on the damages to Leday—that the iodine caused numbness, loss of
balance, loss of sensation, a limp, speech deficits, and swallowing difficulties; that
the phenergan caused hyperactivity and jitteriness; and that the tape caused keloid
scarring. 
          In her report, Hoover fails to state that the nurses knew of Leday’s allergies or
that Leday’s allergies were documented in her charts.


 Without a known or
documented allergy, the standard of care delineated by Hoover is inapplicable to the
nurses’ care of Leday. Hoover’s report thus lacks information linking the standard
of care (patients with an iodine allergy should not be given iodine) and the alleged
breach in this case (the nurses allowed Leday to receive iodine knowing she was
allergic). Hoover’s report also fails to state that Leday displayed signs of an allergic
reaction at the time of her treatment, such as hives. Hoover’s report thus lacks
information linking the standard of care (nurses should be able to recognize an
allergic reaction such as hives) and the alleged breach in this case (the nurses failed
to recognize an apparent allergic reaction). These missing links are a reasonable basis
for the trial court to conclude that the report is insufficient. See Bowie Mem’l Hosp.,
79 S.W.3d at 53 (because report lacked information linking expert’s conclusion to
defendant’s alleged breach, “the trial court could have reasonably determined that the
report was conclusory”). Similarly, Hoover’s report does not state what the nurses
in Leday’s case should have done differently in connection with the administration
of the iodine compound. This omission is also a reasonable basis for the trial court
to conclude that the report is insufficient. See Palacios, 46 S.W.3d at 880. 
Moreover, Hoover’s report does not include any allegations of breach concerning the
nurses’ use of hospital tape. 
          We hold that the trial court reasonably could have concluded that the
information within the four corners of the Ledays’ expert report does not inform
Houston Northwest of the specific conduct by its nurses called into question, nor does
it provide the trial court a factual basis for determining that the Ledays’ claims
against Houston Northwest have merit. The trial court therefore did not abuse its
discretion in dismissing the Ledays’ claims against Houston Northwest.


 
Conclusion
          We hold that the trial court did not abuse its discretion in denying the Ledays’
motion for extension of time in which to file an expert report against Zatorski, nor
in dismissing the Ledays’ claims against Houston Northwest. We therefore affirm.
 
   
                                                             Jane Bland
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Alcala and Bland.