Affirmed and Opinion filed March 10, 2005









Affirmed
and Opinion filed March 10, 2005.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-01079-CV

____________

 

STEPHANIE WORTHAM
SMALLING, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF 

SKYLER
KENNEDY WORTHAM-KRAUSE, DECEASED, Appellant

 

V.

 

MICHAEL O.
GARDNER, M.D., NICHOLAS ZACHARIAS, M.D., 

BAYLOR
COLLEGE OF MEDICINE AND ITS DIVISIONS BAYLOR PERINATAL ASSOCIATES AND BAYLOR
NEONATOLOGY ASSOCIATES, AND ST. LUKE’S EPISCOPAL HOSPITAL, Appellees

 



 

On Appeal from the 113th
District Court

Harris County, Texas

Trial Court Cause No. 02-10214

 



 

O P I N I O N








Stephanie Wortham Smalling, acting
individually and on behalf of the estate of Skyler Kennedy Wortham-Krause,
deceased, appeals the trial court’s dismissal of her lawsuit against appellees
because she failed to file an expert report as required for health care
liability claims under the Medical Liability and Insurance Improvement
Act.  Smalling contends that the trial
court erred because her claims are not health care liability claims and
therefore no expert report was required. 
For the reasons discussed below, we affirm.

I.        Factual
and Procedural Background

In March of 2000, Smalling[1]
was approximately 23 weeks pregnant with her first child when she unexpectedly
went into premature labor.  She first
went to the emergency room at Memorial Hermann Hospital-The Woodlands, but
later transferred to appellee St. Luke’s Episcopal Hospital (“St.
Luke’s”).  Smalling transferred to St.
Luke’s so that, if efforts to stop the labor failed and the baby was born
prematurely, the baby could be transferred to the superior Level III nursery
facilities at Texas Children’s Hospital (“TCH”).  

The baby girl, named Skyler Kennedy
Wortham-Krause, was born at 8:23 p.m. on March 4, 2000.  Present for the birth were family members,
including Erich Krause, Smalling’s husband and Skyler’s father.  Appellees Michael O. Gardner, M.D., and
Nicholas Zacharias, M.D., the on-call obstetricians, participated in Skyler’s
delivery.  According to Smalling, she and
her family were told that Skyler died within minutes of her birth.  








Smalling alleges that it was only after
reviewing the medical records some time later that she learned that Skyler did
not die moments after her birth, but instead lived for almost two hours.  In addition, at some point, Smalling obtained
at least one photograph of Skyler on a table, uncovered and surrounded by what
appear to be soiled linens.  Distressed
by the revelation that her daughter may have lived without any comfort from
family or without proper care, Smalling filed a petition to investigate a
potential claim and took Dr. Gardner’s deposition.  In February of 2002, Smalling filed suit
against Dr. Gardner, Dr. Zacharias, Baylor Perinatal Associates and Baylor
Neonatology Associates (collectively, the “Baylor appellees”) and St
Luke’s.  She also sued other health care
providers for medical negligence relating to her prenatal care.  Those claims were eventually severed and are
not part of this appeal.  

In her original petition, Smalling
complained that St. Luke’s and the Baylor appellees engaged in a concerted
effort to deny appropriate custodial or palliative care to Skyler and to
prevent Smalling from knowing the status, location, and condition of her
daughter.  These actions, Smalling
alleged, deprived her and her family of the right to nurture Skyler and to make
informed decisions about the type of care Skyler might require and should
receive.  Among other things, she alleged
that Skyler was not taken to any nursery, but was instead kept in a “secret
location” and was denied proper attention, comfort, or custodial or palliative
care.  Her claims included breach of
contract, common law negligence and negligent misrepresentation, fraud,
misrepresentation, and fraud in the inducement, deceptive trade acts and
practices, intentional infliction of emotional distress, and false
imprisonment.  Smalling expressly alleged
that her claims were not health care liability claims and so allegedly were not
governed by article 4590i of the Texas Revised Civil Statutes, also known as
the Medical Liability Insurance and Improvement Act (“MLIIA”).  She also denied that a physician-patient
relationship existed between Skyler and appellees. 

In January of 2003, appellees filed
motions to dismiss Smalling’s claims against them, alleging that she must file
an expert report as required for health care liability claims under the
MLIIA.  The next month, Smalling amended
her petition to allege that appellees did not send Skyler to TCH as had been
arranged and added claims for kidnaping, child abduction, and conspiracy.  On March 12, 2003, the trial court granted
appellees’ motions and dismissed Smalling’s claims against them.  Smalling requested findings of fact and
conclusions of law, and later filed a notice of past due findings, but the
trial court declined to file them.  








Smalling then moved to reconsider the
dismissal and filed, at the same time, a second amended petition.  In June of 2003, the trial court denied the
motion to reconsider, ordered severance and entry of final judgment dismissing
with prejudice all of Smalling’s claims against appellees.  This appeal followed.

II.       Analysis

On appeal, Smalling contends the trial
court erred by (1) dismissing her claims for failing to file an expert report
as required under the MLIIA; (2) deciding if a statute applies by granting a
motion to dismiss instead of by summary judgment motion; (3) failing to find
appellees are estopped from asserting the requirement of, and have waived the
right to insist on, an expert report; (4) denying Smalling’s motion for
continuance and the right to conduct discovery; (5) dismissing Smalling’s
claims in violation of the open courts and special laws provisions of the Texas
Constitution; (6) refusing to make findings of fact and conclusions of law; (7)
abusing its discretion in any fact findings inherent in the dismissal; and (8)
entering a take-nothing judgment in response to a motion to dismiss.  Smalling also moved to strike portions of St.
Luke’s and the Baylor appellees’ appellate briefs and appendices.  We first address the motions to strike, and
then address Smalling’s issues as necessary to resolve them.

A.      The
Motions to Strike 

Smalling filed two motions to strike: (1)
a motion to strike portions of St. Luke’s brief and appendix, and (2) a motion
to strike portions of the Baylor appellees’ brief and appendix.  We deny both.

1.       The
Motion to Strike Portions of St. Luke’s Brief and Appendix








In her motion directed to St. Luke’s,
Smalling complains that St. Luke’s brief contains a section not authorized by
the rules of appellate procedure, lacks appropriate record references,
inappropriately refers to her deposition testimony, is argumentative in
sections that should not contain argument, cites a medical dictionary not part
of the record, and incorrectly cites a case. 
She further complains that St. Luke’s entire appendix should be stricken
because the documents it contains are not a part of the record.  

With minor exceptions, an appellee’s brief
must conform to the requirements of Rule 38.1 of the Texas Rules of Appellate
Procedure.  Tex. R. App. P. 38.2. 
However, the briefing rules are to be construed liberally; “substantial
compliance” is sufficient.  See Tex. R. App. P. 38.9.  We have reviewed St. Luke’s brief and
appendix and do not find the type of flagrant violations that may result in
striking the complained-of portions.  For
example, Smalling complains that St. Luke’s “Introduction and Summary” section
is not authorized by the rules.  However,
the briefing rules do not specifically limit a brief to the stated sections,
see Tex. R. App. P. 38.1,
38.2, nor do they prohibit inclusion of an introduction.  Moreover, the section may assist the court in
understanding the issues from this appellee’s perspective.  

Similarly, we find unavailing Smalling’s
complaint that statements in St. Luke’s “Factual Background” section violate
Rule 38.1(f) because they are inappropriately argumentative.  For example, Smalling claims that a heading
is inappropriately argumentative because it states the trial court “properly”
dismissed her claims.  This and the other
statements she complains of are not so overly argumentative that they must be
stricken from the brief.  Likewise,
Smalling’s complaint that a case citation incorrectly names a party and fails
to reflect that it was “not designated for publication” does not require that
we strike the citation and its accompanying argument; although counsel and
litigants should strive to cite cases and other authorities correctly, the
failure to do so in this case does not necessitate striking portions of the
brief.  The court is capable of evaluating
what, if any, value to assign the case.








As for Smalling’s complaints about St. Luke’s appendix, St.
Luke’s requested supplementation of the record to include all of the documents
contained in the appendix, and merely included them in an appendix for this
court’s convenience.  Additionally, the
documents Smalling asks us to strike are motions and responses relevant to
Smalling’s appellate issues, including St. Luke’s motion to dismiss pursuant to
Article 4590i—a primary subject of her appeal. 
The record may properly be supplemented with such documents and they may
be included in an appendix.  See Tex. R. App. P. 34.5(c)(1), (3)
(supplementation of clerk’s record); 38.1(j)(2)
(optional contents of appendix). 

We have reviewed carefully the matters raised in Smalling’s
motion, including her other complaints not directly addressed above, and deny
her motion to strike portions of St. Luke’s brief and appendix. 

2.       The Motion to Strike
Portions of the Baylor Appellees’ Brief and Appendix

Next, we address Smalling’s motion to strike portions of
the Baylor appellees’ brief and appendix. 
Smalling makes many of the same types of complaints as those discussed
above about the brief the Baylor appellees originally submitted.  However, that brief was returned unfiled
because it exceeded the page limit.  The
Baylor appellees then submitted an amended brief that did not exceed the page
limits.  Smalling did not file another
motion to strike, nor did she amend her existing motion to address the amended
brief.  Therefore, we deny this motion as
moot.

B.      Does the MLIIA Apply to
Smalling’s Claims?

In her first issue, Smalling contends the trial court erred
in dismissing her claims for failing to file the expert report required by the
MLIIA because no provider-patient relationship existed between Skyler and
appellees, and because the claims were not “health care liability claims”
subject to the MLIIA.  

1.       The Medical Liability
and Insurance Improvement Act








To resolve Smalling’s first issue, we must determine
whether she has alleged claims that are health care liability claims as defined
in the former MLIIA.[2]
 The MLIIA, found at article 4590i of the Texas
Revised Civil Statutes, defines a health care liability claim as:

a cause of action against a health care provider or
physician for treatment, lack of treatment, or other claimed departure from
accepted standards of medical care or health care or safety which proximately
results in injury to or death of the patient, whether the patient’s claim or
cause of action sounds in contract or tort.

Tex.
Rev. Civ. Stat. Ann.
art. 4590i, § 1.03(a)(4).  If Smalling’s claims are health care
liability claims as defined in the MLIIA, then she was obliged to comply with
the MLIIA’s expert report requirements and the trial court did not err in
dismissing her claims on this basis.  See
id. § 13.01(d), (e)(3).








The Texas Supreme Court’s test as to whether a claim is a
health care liability claim subject to the MLIIA is to show that a plaintiff
cannot win her case without proving a breach of an accepted standard of medical
or health care.  See MacGregor Med.
Ass’n v. Campbell, 985 S.W.2d 38, 41 (Tex. 1998); Sorokolit v. Rhodes,
889 S.W.2d 239, 242 (Tex. 1994).  A claim
is also a health care liability claim if the act or omission alleged in the
complaint is an inseparable part of the rendition of medical or health care
services.  See Walden v. Jeffery,
907 S.W.2d 446, 448 (Tex. 1995) (per curiam). 
The court “looks to the underlying nature of the claim to determine its
true character and whether it is actually a health care liability claim or
something else.”  Gomez v. Matey,
55 S.W.3d 732, 735 (Tex. App.—Corpus Christi 2001, no pet.) (citing Sorokolit,
889 S.W.2d at 242).  In doing so, the court is not bound
by the plaintiff’s own characterization of the claims.  Buck v. Blum, 130 S.W.3d 285,
291 (Tex. App.—Houston [14th Dist.] 2004, no pet.).  Plaintiffs cannot use artful pleading to avoid
the MLIIA’s requirements when the essence of the suit is a health care
liability claim.  Garland Comty. Hosp.
v. Rose, No. 02-0902, 2004 WL 2480381, at *2 (Tex. Nov. 5, 2004). 

2.       Standard of Review

A dismissal under the MLIIA is generally reviewed under an
abuse of discretion standard.  See
Buck, 130 S.W.3d at 290; Ponce v. El Paso Healthcare Sys., Ltd, 55
S.W.3d 234, 236 (Tex. App.—El Paso 2001, pet. denied).  However, to the extent resolution of this
issue requires interpretation of statute itself, our review is de novo.  See Buck, 130 S.W.3d at 290; Gomez,
55 S.W.3d at 735.

3.       Application of The
MLIIA to Smalling’s Claims

a.       A Provider or
Physician-Patient Relationship is Not the Test.

Smalling first contends that her claims are not health care
liability claims because no health care provider or physician-patient
relationship exists between Skyler and appellees.  See Lopez v. Aziz, 852 S.W.2d 303, 305
(Tex. App.—San Antonio 1993, no writ) (stating that “article 4590i . . .
implicitly recognizes that a physician-patient relationship must exist before a
health care liability claim may be asserted”). 
She appears to base this contention on the express allegations in her
pleadings that no such relationship existed with appellees and she never
authorized or consented to medical treatment by appellees for Skyler.  She also points to Dr. Gardner’s deposition
testimony, which she contends confirms her allegations.[3]  However, this is not the standard by which
the trial court determines whether a claim is a health care liability claim.








As discussed above, neither a plaintiff’s characterization
of her causes of action nor the physician’s opinion as to whether he has a duty
to provide medical care to a patient is dispositive of whether the MLIIA
applies.  Rather, the court’s focus is whether
the essence of the claim asserted by the plaintiff involves departures from
accepted standards of medical care.  As
we discuss further below, we find that Smalling’s claims are in essence claims
directed to the care or lack of care Skyler received from appellees.  We also note that all appellees alleged the
applicability of the MLIIA in their original and amended answers, which would
be inconsistent with a denial that such a relationship exists.  Therefore, we do not find her assertion that
no provider or physician-patient relationship exists sufficient, in and of
itself, to render the MLIIA inapplicable.

b.       Smalling’s Claims are
Health Care Liability Claims.

We now turn to Smalling’s contention that her claims are
not health care liability claims. 
Smalling asserts that her claims are not directed to any medical care
appellees provided to Skyler; instead, she alleges that Skyler was given no
medical care and appellees were not authorized or under any duty to treat
her.  She contends the essence of her grievances
is that Skyler should not have been at St. Luke’s, as no one there had
authority or consent to do anything for her other than to allow the TCH
transport team to take her to its facility, or even to have custody of her, and
that appellees lied about her time of death. 
These factual allegations, Smalling asserts, “are the basis of [her]
kidnapping, false imprisonment, child abduction, fraud, misrepresentation,
common law negligence, breach of contract, deceptive trade practices, and
conspiracy claims.”  Additionally, she
asserts that these claims are not health care liability claims because they are
not an inseparable part of the rendition of medical services.  We disagree.

(i)      Smalling’s allegations

In her first amended original petition, the actions
Smalling complains of








are all centered around the
concerted efforts and conspiracy by [appellees] to deny appropriate
non-medical, care custodial, or palliative care to Baby Skyler; to obstruct
and prevent Skyler from being transferred to Texas Children’s Hospital where
she could receive appropriate medical care, and to prevent Plaintiff and
the family from knowing the status, location, and condition of Skyler or even
the fact that she was still alive.  These
actions deprived Plaintiff and her family of the right to have contact with her
daughter and to make informed decisions about the type of care which her
daughter might require and should have. 


Smalling
also alleges that she gave explicit instructions that Skyler be transported to
TCH, but in any event, she alleges there is an “implicit if not explicit
agreement that upon birth, the baby would be admitted to some nursery and
would at all times be in the care of either the family or the nursery
room nurses, and that Plaintiff and the family would be fully advised of
the location of the baby and of her condition.”  Additionally, she alleges, there is an
“implicit if not explicit agreement that any newborn will be given not only
any appropriate medical care, should any be required, but basic humane
custodial or palliative care.”  She
also alleges that she and the family were told Skyler died almost immediately
after birth, which was untrue, and that they failed to send Skyler to TCH or
any nursery or special infant unit while she was alive.  As a result, Smalling alleges, Skyler
received “no proper attention, comfort, or custodial or palliative care” and
deprived Smalling and her family of the ability to spend time with Skyler while
she was alive and to make decisions about what was best for Skyler and for
them.








All of Smallings’s claims are based on variations of these
complaints.  For example, both Smalling’s
breach of contract and deceptive trade practices claims are based on the
appellees’ decision not to transport Skyler to TCH as Smalling instructed.  She complains the appellees breached their
contract with her because she did not authorize them to “place Skyler in
whatever secret location they chose to place her,” to keep her condition and
the fact she was still alive from Smalling and her family, and to usurp
Smalling’s right to “make decisions about what was best” for Skyler.  The negligence and negligent misrepresentation
claims are based on appellees’ alleged “refusing to and interfering with the
transport of Skyler to Texas Children’s Hospital, in sending Skyler off to some
secret location instead, in denying Baby Skyler even the most basic comfort or
custodial or palliative care, in failing to notify Plaintiff and the family
that Skyler continued to live as long as she did after her birth, and in other
respects.”  The fraud, fraudulent
misrepresentation, and fraudulent inducement claims are based on the same actions,
and in connection with those claims she alleges, among other things, that
appellees “did not and have never had any intention or desire to allow a baby
in the condition of Skyler to be transported to [TCH] . . . or to accurately
advise the parents or other family members of the whereabouts and condition of
babies such as Skyler who in the opinion of the obstetrician are deemed to
[be] ‘non-viable.’”

(ii)      Smalling alleges health
care liability claims

We find that the essence of all of these complaints is the
treatment or lack of treatment Skyler received. 
See MacGregor, 985 S.W.2d at 40–41.  Appellees’ decision not to transport Skyler
to TCH as arranged, and whether that decision was appropriate, implicates
Skyler’s diagnosis, care, and/or treatment. 
Likewise, any treatment or lack of treatment Skyler received while she
remained at St. Luke’s implicates the standard of care because any decision
regarding the appropriateness or inappropriateness of the treatment requires
one to consider the duties a specialist owes to a patient and what an
ordinarily prudent physician or health care provider would do under the
circumstances.  See Rose, 2004 WL
2480381 at *1–2; Savage v. Psychiatric Inst. of Bedford, Inc., 965
S.W.2d 745, 752–53 (Tex. App.—Fort Worth 1998, pet. denied); Mulligan v.
Beverly Enters.-Tex. Inc., 954 S.W.2d 881, 884 (Tex. App.—Houston [14th
Dist.] 1997, no pet.).  Therefore, we
hold that these claims are health care liability claims subject to the MLIIA’s
expert report requirements. 

(iii)     Response to Smalling’s
characterization of her allegations 








Although we already have concluded that her claims are
health care liability claims subject to the MLIIA, we will respond to
Smalling’s main arguments in support of her contrary position.  First, Smalling contends that appellees were
not “authorized or expected to” provide medical services to Skyler, and
therefore their duty to Skyler was only a duty of ordinary care.  According to Smalling, appellees should have
acted as any reasonable person—without medical training—would act after
delivering a baby in a non-hospital setting. 
She claims the actions that should have been taken to assist Skyler,
such as wrapping her in a blanket or suctioning her, do not require medical
knowledge or expertise because babies have been delivered by countless lay
people for centuries, and such things are within the knowledge of ordinary
people.  

However, this case does not involve the routine delivery
and treatment of a baby by ordinary people. 
This case involves the hospital delivery of an extremely premature
infant, whose prognosis was unquestionably poor.  In such a case, the range of complications,
including the possibility that the child may die or, if she lives, may have
profound disabilities, implicates specialized medical knowledge that requires
medical expert testimony.  And,
Smalling’s situation was in no way equivalent to a home delivery by a lay
person; she was admitted to St. Luke’s as a patient with the intention of
receiving medical care and services for herself and her baby.  We decline to apply the standard of care
urged by Smalling.  








Smalling also places considerable emphasis on her
allegation that, in effect, appellees lied to her that Skyler was dead, when,
in fact, the baby lived for almost two hours. 
She contends that no expert testimony is required to determine the time
of Skyler’s death, because it is stated in the medical records, and an expert
is not needed to inform a jury that it was wrong to lie.  However, a plaintiff’s allegations that misrepresentations were
“knowingly” made is not determinative when analyzing the underlying nature of a
claim.  Gomez, 55 S.W.3d at 735; Savage,
965 S.W.2d at 752.  Instead, we focus
on whether the action is controlled by the MLIIA.  Gomez, 55 S.W.3d at 735.  We acknowledge that whether this claim is
controlled by the MLIIA presents a closer question, but conclude that the
erroneous or wrongful assertion that Skyler was dead when she was not requires
Smalling to prove what the baby’s status or condition was after birth,
including whether she was dead or dying, and whether making the statement was a
deviation from the standard of care. 
This conclusion is supported by Smalling’s own petition, which implies,
in connection with her fraud and fraudulent misrepresentation claims, that
appellees Dr. Gardner and Dr. Zacharias intentionally withheld information on
Skyler’s condition from Smalling and her family because they deemed Skyler
“non-viable.”  

At oral argument, Smalling also emphasized that her
complaint was not that appellees failed to care for Skyler, but that appellees
deprived Skyler’s parents of the opportunity to make decisions regarding her
care.  We conclude, however, that when
and how appellees determined Skyler’s prognosis and chose to discuss that
prognosis with Smalling or her family is inseparable from appellees’ decisions
regarding treatment or the lack of treatment. 
It may be that appellees’ failure to inform Smalling and her family
about Skyler’s status after her birth was wrong, but to prove they were wrong,
Smalling must show that appellees did not act as an ordinarily prudent
physician or health care provider would act in similar circumstances.[4]  Therefore, we find Smalling’s claims are
health care liability claims.[5]

(iv)     Smalling’s contention that
Texas provides special legal protections for infants like Skyler further
demonstrates that her claims are health care liability claims








Finally, we address the initial argument Smalling makes in
her brief—that Texas provides special legal protections for infants like Skyler
and that these protections apply regardless of appellees’ status as medical or
health care providers.  In this argument,
Smalling points to this court’s opinion in HCA, Inc. v. Miller ex rel.
Miller, 36 S.W.3d 187 (Tex. App.—Houston [14th Dist.] 2000), aff’d,
118 S.W.3d 758 (Tex. 2003), the Advance Directives Act,[6]
and the Texas Penal Code’s prohibitions against injuring, abandoning or
endangering a child.[7]  Smalling argues that these authorities
prohibit the actions appellees allegedly took with regard to Skyler “whether or
not they were properly her health care providers and whether or not her parents
consented to their actions.”  However, in
making this argument, Smalling’s assertions demonstrate that her real complaint
is about the care or lack of care Skyler received from appellees.  

For example, Smalling contends Miller stands for the
proposition that an infant must be evaluated at birth and, unless legal
requirements are met, “life-sustaining treatment must be provided.”  She also asserts that, because Skyler was not
certified as terminal and Skyler’s parents gave no written approval to withhold
treatment, “the law requires that all available treatment be provided to
Skyler.”  And, she charges that Skyler
was purposefully abandoned and endangered because appellees determined that her
life was not worth living, and so “left her to die without anything being done
to help her” and did not provide her with “reasonable and necessary care.”  Such claims relate directly to the health
care Skyler was or was not provided. 
Smalling cannot circumvent the MLIIA merely by recasting her claims as
other causes of action.  See Gormley
v. Stover, 907 S.W.2d 448, 450 (Tex. 1995) (per curiam); Walden, 907
S.W.2d at 448.  Therefore, we hold that
the MLIIA applies to Smalling’s claims, and the trial court did not err in
dismissing her claims for failing to file an expert report as required.  

Smalling’s first issue is overruled.








C.      Dismissal of Smalling’s
Claims by Motion Rather Than Summary Judgment Was Not Improper.

In
Smalling’s second issue, she asserts the trial court used the wrong procedure
to dispose of her case.  Rather than
granting a motion to dismiss and entering an order of dismissal, she claims the
court should have disposed of the case via summary judgment procedures.  As we explain below, we reject this assertion
because a motion to dismiss was the appropriate procedural vehicle to dispose
of her claims.  In fact, it is the
procedure contemplated by the statute.

The MLIIA requires that “[a] report must be provided for
each physician or health care provider against whom a claim is asserted, and
must be provided no later than the 180th day after the date on which a health
care liability claim is filed, unless a statutory extension applies.”  Gomez, 55 S.W.3d at 734 (citing Tex. Rev. Civ. Stat. art. 4590i, § 13.01(d)).  If the claimant fails to comply with the
deadline, upon proper motion by the defendant, the trial court is required to
enter sanctions that include dismissing the action with prejudice.  Id. (citing Tex. Rev. Civ. Stat. art. 4590i, § 13.01(e)(3)).








Smalling
asserts she was entitled to the procedural and substantive safeguards that
summary judgment procedure would have provided. 
However, the trial court did not dismiss Smalling’s claims because it
determined the substance of her claims lacked merit and could not
succeed as a matter of law.  Rather, the
trial court dismissed Smalling’s claims because the MLIIA applied to her claims and Smalling
had not satisfied the procedural requirements.  When a plaintiff brings health care liability
claims but fails to file an expert report, on a defendant’s motion, the MLIIA
mandates dismissal and a trial court has no discretion not to dismiss.  Tex.
Rev. Civ. Stat. art 4590i, § 13.01; George v. Houston Eye Assocs.,
No. 14-02-00629-CV, 2003 WL 22232651, at *2 (Tex. App.—Houston [14th Dist.]
Sept. 30, 2003, pet. denied) (not designated for publication) (“Importantly,
the statutory language within the Act is mandatory, and where a plaintiff fails
to satisfy one of the procedural options available, a trial court has no
discretion . . . .”) (citing Thomas v. Ben Taub Hosp., 63 S.W.3d 908,
911 (Tex. App.—Houston [14th Dist.] 2002, no pet.)).  We cannot say the trial court erred in doing
exactly what the MLIIA requires.[8]

Also,
requiring summary judgment proceedings in these circumstances would be
inappropriate.  We agree with Smalling
that the trial court’s decision to grant appellees’ motions to dismiss
necessarily involved a determination that the MLIIA applied to her claims.  But, to do this, the trial court need only
examine Smalling’s pleadings and the underlying nature of her claims to determine
whether the MLIIA applied.  See Gomez,
55 S.W.3d at 735 (“Gomez was not required to produce any evidence in response
to the appellee’s motion, but was required to provide pleadings that
sufficiently state claims falling outside the purview of the MLIIA.”).  Summary judgment procedures and proof would
not assist the trial court in this task, but would needlessly burden the
parties and the court.  The MLIIA does
not require this and we decline to engraft this requirement onto the MLIIA. 
We overrule Smalling’s second issue.

D.      Appellees Did Not Waive the
Right to Assert that Smalling’s Claims are Health Care Liability Claims, Nor
Are They Estopped to Assert This.

In her third issue, Smalling contends appellees are
estopped and have waived the right to insist on an expert report under the
MLIIA because they denied the existence of a physician-patient relationship
between them and Skyler.  In making this
argument, Smalling does not distinguish between the Baylor appellees and St.
Luke’s.








Smalling does not identify any evidence to support her
contention.  Presumably, with regard to
the Baylor appellees, she is referring to their responses to Smalling’s
requests for disclosure and Dr. Garland’s deposition testimony.  In discovery, Smalling asked the Baylor
appellees to identify the legal theories and factual bases of their claims or
defense.  The relevant portions of their
responses is as follows: “Drs. Zacharias and Gardner delivered Skyler, but they
were not responsible for her medical care post-delivery.  The baby’s care transferred to the nurses and
neonatologists on duty at the time.” 
When asked at deposition if a physician-patient relationship existed between Skyler and him, Dr. Gardner testified, “I guess as I understand
it, no.”  He also testified that the
neonatologists, rather than him or the other Baylor obstetricians or
physicians, would have been Skyler’s doctors after birth.  

Waiver is largely a matter of intent, and “intent must be
clearly demonstrated by the surrounding facts and circumstances.”  Jernigan v. Langley, 111 S.W.3d 153,
156 (Tex. 2003) (per curiam).  “There can
be no waiver of a right if the person sought to be charged with waiver says or
does nothing inconsistent with an intent to rely upon such right.”  Id. (citing Md. Cas. Co. v.
Palestine Fashions, Inc., 402 S.W.2d 883, 888 (Tex. 1966)).  In Jernigan, the court held that, as a
matter of law,  a defendant physician did
not waive the right to object that the plaintiff failed to file adequate expert
reports as required by the MLIIA even though he waited over 600 days after
receiving the reports to object, participated in discovery, filed a motion for
summary judgment on other grounds, and amended his answer to delete references
to the plaintiff’s failure to follow statutory prerequisites to suit.  Id. at 157.  








Here, the trial court could have concluded that the Baylor
appellees’ discovery responses and Dr. Gardner’s testimony “were not so
inconsistent with an intent to assert the right to dismissal under section
13.01(e) of the MLIIA as  to amount to a
waiver of that right.” See id. at 157–58.  Additionally, the Baylor appellees
consistently invoked the protections of the MLIIA in their original and amended
answers.[9]  Therefore, we reject Smalling’s waiver
contention.  

As to St. Luke’s, Smalling offers no evidence it made any
representations that would be inconsistent with a waiver of the right to assert
the protections of the MLIIA. 
Additionally, St. Luke’s asserted the protections of the MLIIA in its
original answer.  Indeed, Smalling’s only
specific assertion against St. Luke’s is that it should have informed Smalling,
in response to her requests for disclosure, that it disputed the statements in
her pleadings.  We conclude that, as a
matter of law, St. Luke’s has not waived and is not estopped to assert the right
to move to dismiss Smalling’s claims based on her failure to file an expert
report.  

Smalling also contends appellees are estopped to assert the
MLIIA because they adopted an inconsistent position to Smalling’s detriment by
claiming no physician-patient relationship, and then contradicting that
statement by proceeding with a motion to dismiss under the MLIIA “as if the
relationship existed.”  This is
essentially the same argument as the waiver argument, and for the same reasons,
we conclude the appellees are not estopped to assert the protections of the
MLIIA.  

We overrule Smalling’s third issue.

E.      The Trial Court Did Not Err
in Denying Smalling’s Motion for Continuance and Discovery Requests.








In her fourth issue, Smalling contends generally that the
trial court abused its discretion in quashing the deposition notices for
several doctors and nurses, denying her motions to compel answers to
interrogatories and requests for production, denying her request to inspect St.
Luke’s premises, and failing to grant her request for a continuance to obtain
the discovery sought.[10]  Smalling contends broadly that she was
entitled to the discovery and the trial court denied her discovery rights
“without any grounds whatsoever.” 
However, her arguments fail to demonstrate reversible error.

Smalling’s deposition notices and appellees’ motions to
quash were filed at or near the time appellees filed their motions to
dismiss.  The trial court did not err in
quashing the notices for the depositions until after it ruled on the motions to
dismiss.  Indeed, permitting such
discovery and then granting appellees’ motions would have resulted in a waste
of time, money, and effort for all parties. 
And, because the trial court could determine the essence of Smalling’s
claims from her pleadings, her ability to defend against the motions to dismiss
was not affected by the trial court’s rulings on her other discovery motions.[11]  Therefore, the trial court did not abuse its
discretion in denying Smalling’s motions for continuance and to compel
discovery, or in quashing the notices for the depositions.

F.       Dismissal of Smalling’s
Claims Does Not Violate the Open Courts and Special Laws Provisions of the
Texas Constitution.








In her fifth issue, Smalling contends that, as applied to
her, the dismissal of her claims for failing to comply with section 13.01 of
the MLIIA violates the open courts[12]
and special laws[13]
provisions of the Texas Constitution. 
Smalling contends she is denied access to the courts in violation of the
open courts provision because, even though her claims are not health care
liability claims subject to the MLIIA, they were dismissed for failure to
comply with the MLIIA’s requirements. 
She also contends the special laws provision is violated because
applying the MLIIA’s requirement of expert reports to claims unrelated to the
practice of medicine effectively immunizes physicians and health care providers
from suit. 

The fallacy of both contentions is Smalling’s assertion
that her claims are not health care liability claims.  As discussed above, we have determined that
her claims are health care liability claims and, as such, are subject to the
MLIIA.  See Tex. Rev. Civ. Stat. art. 4590i, §
1.03.  Smalling’s claims were dismissed
not because of the creation of an “impossible condition” imposing an unacceptable
barrier to the courts as she contends, but because she intentionally failed to
produce an expert report as the MLIIA requires. 
See id. § 13.01(d); McGlothlin v. Cullington, 989 S.W.2d
449, 452–53 (Tex. App.—Austin 1999, pet. denied).  “Texas law is clear that when a litigant
fails to comply with the cost bond or expert report provisions of [the MLIIA],
the dismissal of the action pursuant to § 13.01(d) does not violate the due
process and open courts provisions of Article I of the Texas Constitution.”  Schorp v. Baptist Mem’l Health Sys., 5
S.W.3d 727, 737 (Tex. App.—San Antonio 1999, no pet.). 

Additionally, to establish an open courts violation,
Smalling must prove that the expert report requirement in section 13.01 of the
Act “is unreasonable or arbitrary when balanced against the statute’s purpose
and basis.”  Shah v. Moss, 67
S.W.3d 836, 842 (Tex. 2001); Schorp, 5 S.W.3d at 737.  Smalling has made no such showing.  Her health care liability claims require
expert testimony at trial concerning the applicable standard of care for the
care and treatment of an extremely premature infant.  As this court previously has held, the MLIIA
“does not violate the open courts provision by requiring an expert report
sooner rather than later in the litigation.” 
Mocega v. Urquhart, 79 S.W.3d 61, 64 (Tex. App.—Houston [14th
Dist.] 2002, pet. denied).








Likewise, contrary to Smalling’s contention regarding the
special laws provision, the MLIIA does not immunize physicians and health care
providers from suit “by requiring expert reports for claims against [them]
unrelated to the practice of medicine.” 
Instead, it unambiguously requires expert reports only when, as in this
case, a plaintiff files suit against “a health care provider or physician for
treatment, lack of treatment, or other claimed departure from accepted
standards of medical care or health care or safety.”  See Tex.
Rev. Civ. Stat. art. 4590i, §§ 1.03, 13.01(d).  

The Legislature has broad authority to create
classifications for legislative purposes, so long as they have a reasonable
basis and operate equally on all within the class.  Ford Motor Co. v. Sheldon, 22 S.W.3d 444,
450 (Tex. 2000); see also Maple Run at Austin Mun. Util. Dist. v. Monaghan,
931 S.W.2d 941, 945 (Tex. 1996).  The
MLIIA treats all physicians and health care providers equally, and rationally
relates to the interest of the State in ensuring that medical practitioners
were not “being placed in the situation of defending frivolous claims at a high
cost” to the health care system.  Schorp,
5 S.W.3d at 736; See also McGlothlin, 989 S.W.2d at 453; Tex. Rev. Civ. Stat. art. 4590i, § 1.02
(detailing the findings and purposes of the MLIIA).

Therefore, we overrule Smalling’s fifth issue.

G.      The Trial Court Was Not
Required to File Findings of Fact and Conclusions of Law.

In Smalling’s sixth issue, she complains the trial court
failed to file findings of fact and conclusions of law.  Again, this court previously has held that,
when a trial court dismisses a claim because the plaintiff failed to comply
with the MLIIA’s procedural requirements, it is appropriate to file
findings of fact and conclusions of law, but the trial court is not required
to do so.  See Mocega, 79 S.W.3d
at 63–64 (holding that findings of fact and conclusions of law were appropriate
but not required because a dismissal under section 13.01 of the MLIIA is a
sanction).  








Smalling urges us to distinguish Mocega because, in her
case, the trial court had to determine that the MLIIA applied to her claims
before entertaining a motion to dismiss under that article.  Without findings of fact and conclusions of
law on this threshold decision, Smalling contends, the reasons why the trial
court determined the claims were health care liability claims remain a mystery
and meaningful appellate review may be impaired.  Although we recognize that findings and
conclusions may be a useful guide for the appellate court, we are unpersuaded
by Smalling’s cursory argument.  

Moreover, our holding in Mocega was informed in part
by the Texas Supreme Court’s opinion in IKB Industries (Nigeria) Ltd. v.
Pro-Line Corp., 938 S.W.2d 440, 442 (Tex. 1997).  In IKB Industries, the Court
explained that findings of fact and conclusions of law are not required when a
judgment is rendered as a sanction because (1) they are often unnecessary, (2)
requiring them in every case would unduly burden trial courts, and (3)
appellate courts are not obliged to give them the same level of deference.  See id.  Here, in ruling on appellees’ motions to
dismiss, the trial court could have determined only one of two possible
interpretations of the law: either Smalling’s claims were recast health care
liability claims (and thus dismissal would be proper) or the claims were not
health care liability claims (and thus the motions would have been
denied).  The trial court’s decision to
dismiss Smalling’s claims presupposes that Smalling asserted health care
liability claims.  We are persuaded that
the Texas Supreme Court’s reasoning in IKB Industries applies here, and
therefore decline to distinguish Mocega as Smalling urges.  Accordingly, we hold the trial court did not
abuse its discretion by not filing findings of fact and conclusions of
law.  See Mocega, 79 S.W.3d
at 63–64. 

We overrule Smalling’s sixth issue.

H.      Did the Trial Court Abuse
Its Discretion in Making Fact Findings?








In her seventh issue, Smalling claims the trial court
abused its discretion because of “overwhelming and even uncontradicted evidence
that [the MLIIA] did not apply.” 
Smalling raises this issue as an alternative issue “[t]o the extent that
any part of the trial court’s decision could be said to implicitly include
factual determinations.”  However,
Smalling’s two-paragraph argument fails to identify any specific implied fact
findings she contends the trial court may have made erroneously, and instead
merely suggests that the trial court could only have concluded that the MLIIA
did not apply to her claims because “[n]o other decision is reasonably
possible.”  However, we already have
determined that, based on Smalling’s pleadings, the trial court correctly
concluded that Smalling’s claims were subject to the expert report requirements
of the MLIIA.  We overrule Smalling’s
seventh issue.

I.        The Trial Court’s
Dismissal of Smalling’s Claims by a Take-Nothing Judgment Does Not Require
Reversal or Reformation.

Smalling asserts in her eighth and final issue that the
trial court erred in entering a take-nothing judgment in response to the
motions to dismiss and requests that we reverse or reform the dismissal order.[14]  We decline to do so, however, because
Smalling failed to preserve the issue for review.  Smalling does not direct us to any part of
the record showing that she brought the issue to the trial court’s attention
and obtained a ruling or a refusal to rule. 
See Tex. R. App. P. 33.1(a).  We also have reviewed the record and cannot
find that she raised the issue below. 
Therefore, the issue is waived.  








III.      Conclusion

We hold that Smalling’s claims are health care liability
claims subject to the expert report requirements of the former MLIIA, and the
trial court did not err in dismissing her claims against appellees with
prejudice for failing to timely file any expert reports.  We also hold that appellees were not estopped
and did not waive the right to insist on expert reports.  We hold that the trial court did not err in
denying Smalling’s discovery requests and motion for continuance to conduct
discovery.  We further hold that the
dismissal of Smalling’s claims does not violate the open courts or special laws
provisions of the Texas Constitution. 
Additionally, the trial court did not err in failing to file findings of
fact and conclusions of law and did not abuse its discretion in making any fact
findings.  Finally, Smalling waived any
complaint that the trial court erroneously entered a take-nothing judgment.

The trial court’s judgment is affirmed.

 

 

 

 

/s/      Wanda
McKee Fowler

Justice

 

Judgment rendered
and Opinion filed March 10, 2005.

Panel consists of
Justices Anderson, Fowler, and Frost.

 

 











[1]  At the time,
Smalling’s last name was Wortham.  She
later remarried and her name was changed to Smalling.





[2]  Act of May 30, 1977, 65th Leg.,
R.S., ch. 817, §§ 1.01–12.01, 1977 Tex. Gen. Laws 2039–2053 (former Tex. Rev. Civ. Stat. art. 4590i), repealed
by Act of June 2, 2003, 78th Leg., ch. 204, § 10.09, 2003 Tex. Gen. Laws
847, 884 (revised and codified at Tex.
Civ. Prac. & Rem. Code §§ 74.001–.507).  Because former
4590i governs this case, we will cite to the article.





[3]  In his
deposition, when asked if a physician-patient relationship existed between
Skyler and him, Dr. Gardner testified, “I guess as I understand it, no.”  He also testified that the neonatologists,
rather than him or the other Baylor obstetricians or physicians, would have
been Skyler’s doctor after birth. 





[4]  Smalling’s contention that her
claims are not directed to the care Skyler received are belied by the numerous
references in her petitions to appellees’ failure to take her to a nursery or
other appropriate place and care for her.





[5]  We caution, however, that our
decision here is not to be read to imply that any statement made by a health
care or medical provider automatically implicates a decision regarding
diagnosis, treatment, or care so as to invoke the MLIIA.  Our decision is limited to the facts before
us. 





[6]  Tex. Health & Safety Code §§
166.001–.166.





[7]  See Tex. Pen. Code §§ 22.04 (criminal
offense of injury to a child, elderly individual, or disabled individual),
22.041 (criminal offense of abandoning or endangering a child).





[8]  Smalling cites
to a case from this court in which we held that a trial court could not dismiss
a party’s substantive claims in response to a general demurrer.  See Centennial Ins. Co. v. Commercial Union Ins. Cos., 803 S.W.2d 479, 482 (Tex.
App.—Houston [14th Dist.] 1991, no writ).  However, as we already have stated,
Smalling’s case was not dismissed because the substance of her claims
lacked merit; her case was dismissed because she failed to satisfy the
procedural requirements.  Deciding that
her claims were subject to the MLIIA did not require the trial court to resolve
fact issues.  It merely required the
trial court to determine the true nature of her claims and whether they
involved a breach of the accepted standard of care.





[9]  In their
motion to dismiss, the Baylor appellees represented to the trial court that Dr.
Gardner and Dr. Zacharias oversaw Smalling’s labor and delivery, neonatologists
from Baylor College of Medicine assessed Skyler after she was born, and Dr.
Gardner agreed with the neonatologists’ assessment that Skyler was not
viable.  The Baylor appellees also
expressly state in their reply to Smalling’s response to the motion to dismiss
that “[t]he medical records, Dr. Gardner’s deposition testimony, and
Plaintiff’s deposition testimony clearly establish that medical care was
provided to Ms. Wortham-Smalling and Skyler by Baylor Defendants and the St.
Luke’s nurses.”





[10]  The record
shows that the trial court granted Smalling’s motion for continuance, in part,
to allow her an additional week to respond in writing to appellees’ motion to
dismiss.





[11]  In her reply brief, Smalling
concedes that, to the extent the trial court could determine whether her claims
were health care liability claims from her pleadings, she has not been harmed
by a lack of discovery.





[12]  Article I,
section 13 of the Texas Constitution provides that “[a]ll courts shall be open,
and every person for an injury done him, in his lands, goods, person or
reputation, shall have remedy by due course of law.”  Tex.
Const. art. I, § 13. 





[13]  Article III,
section 56 of the Texas Constitution provides that “[t]he Legislature shall
not, except as otherwise provided in this Constitution, pass any local or
special law,” including any law “for limitation of civil or criminal
actions.”  Tex. Const. art. III, § 56(a)(28). 





[14]  St. Luke’s
correctly points out that the trial court’s order dismissing Smalling’s claims
against St. Luke’s does not contain ‘take-nothing’ language (“Plaintiff’s
claims against [St. Luke’s] are dismissed pursuant to Article 4590i with
prejudice as to the refiling of same.”). 
The dismissal order for the Baylor appellees, however, states that
“Plaintiff shall take nothing from these Defendants.”  We interpret Smalling’s eighth point of error
as a complaint only about the order dismissing her claims against the Baylor
appellees.